IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THEIA TECHNOLOGIES LLC, *Plaintiff* | : : : | CIVIL ACTION |
| v. | : : | |
| THEIA GROUP, INC., *et al.*, *Defendants* | : : | No. 20-97 |

## MEMORANDUM

PRATTER, J.                                                                                                    NOVEMBER 2, 2020

Theia Technologies, LLC brings this lawsuit alleging trademark infringement and unfair competition under the Lanham Act against Theia Group, Inc. and Theia Holdings A, Inc. for their alleged infringement of the THEIA mark. Although the parties in this ongoing trademark infringement action each lay claim to the name Theia—the Titan goddess of sight—the parties' recent discovery disputes have been more the stuff of mortal squabbling. Plaintiff has moved to compel amended responses and production of all responsive documents from Defendants. Doc. No. 48. Defendants oppose the motion and maintain their responses and production are sufficient. Doc. No. 49.

The pending motion is yet another instance of these parties' ongoing lack of cooperation in the discovery process. The parties dispute whether Defendants waived their objections based on allegedly incomplete and overdue responses; whether Defendants waived privilege after making without a contemporaneous privilege log; and whether Defendants' productions are deficient. For the reasons that follow, the Court grants in part and denies in part Plaintiff's motion.

## BACKGROUND AND PROCEDURAL HISTORY

Earlier this year, in anticipation of the preliminary injunction hearing, the Court directed the parties to engage in informal limited discovery. Plaintiff sent a letter to Defendants with seven requests for production. Defendants did not initially respond. The preliminary injunction hearing was later continued due to COVID-19 concerns. In early May, Plaintiff propounded the same seven requests, this time in a captioned document. A contentious conference in June revealed that Defendants had refused to produce any discovery absent a protective order. The Court admonished the parties to meet and confer productively and professionally. Soon after, the parties entered into a stipulated protective order. With the protective order finally in place, Defendants made their first production and emailed their document requests to Plaintiff. In June, Plaintiff deposed Defendants' corporate witness, Joseph Fargnoli, and corporate secretary, John Gallagher, respectively. Plaintiff contends that these depositions revealed there were responsive documents that had not yet been produced.

Defendants maintain that, because the parties were engaged in informal limited discovery from February through September, they did not need to serve formal objections and responses. After submitting their findings of fact and conclusions of law for the preliminary injunction briefing, Defendants served a full set of document requests on August 20. Plaintiff responded that Defendants waived all objections to earlier informal discovery and requested Defendants withdraw their requests and agree to a discovery stay. On September 1, Plaintiff sent its first deficiency letter to Defendants, requesting full responses—without objections—and full production no later than September 8. Although Defendants indicated they would respond by September 11, Defendants served their responses on September 14 without a document production. Upon receipt of the responses, Plaintiff sought to confer. Following the conferral call, Plaintiff sent a second

deficiency letter, requesting that Defendants serve amended responses by October 1 and produce the remaining documents and privilege log by October 15.

Plaintiff contends that rather than respond to the deficiency letter, Defendants served productions that were largely duplicative of prior sets or were mostly comprised of publicly available records. Defendants reply that they were drafting a response to the deficiency letter when Plaintiff filed the pending motion to compel.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 26(b)(1) provides that parties may obtain discovery regarding any nonprivileged matter that is both relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The party moving to compel discovery under Federal Rule of Civil Procedure 37 bears the initial burden of demonstrating the relevance of the requested information. *First Niagara Risk Mgmt., Inc. v. Folino*, 317 F.R.D. 23, 25 (E.D. Pa. 2016). If this initial showing is made, the resisting party can oppose by showing that the material requested is not relevant under Rule 26 or that the burdens of production outweigh the "ordinary presumption" in favor of disclosure. *Id.* Plaintiff seeks to compel Defendants to respond to Document Requests 1, 2, 3, 4, 6, and 7. The Court reviews the disputed requests in turn.

Because they bear on Plaintiff's showing of relevancy for the requested discovery, the Court briefly recounts applicable legal standards for a Lanham Act claim. A party claiming infringement under the Lanham Act "must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000). The same standard applies to unfair competition claims brought pursuant to § 43(a) of the Lanham Act, *see id.*, and common law infringement claims, *see*

*First Am. Mktg. Corp. v. Canella*, No. 03-812, 2004 WL 250537, at *2 (E.D. Pa. Jan. 26, 2004) (listing elements of common law trademark infringement claim). To determine whether one mark infringes upon another mark, the Third Circuit Court of Appeals uses the "likelihood of confusion" analysis and has outlined a series of non-exhaustive factors to guide that inquiry. *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983).[1]

## DISCUSSION

### I. Defendants Did Not Waive Their Objections

As a threshold matter, Plaintiff argues that Defendants' "objections and responses" are grossly overdue. Ordinarily, Federal Rule of Civil Procedure 34 sets a 30-day timeframe in which a party must respond to discovery requests. Fed. R. Civ. P. 34(b)(2)(A). Here, however, the parties agreed—at the Court's *instruction*—to an informal exchange of discovery until after the

---

[1] The *Lapp* factors are:

(1) the degree of similarity between the owner's mark and the allegedly infringing mark;
(2) the strength of the owner's mark;
(3) the price of the goods and other factors indicating the care and attention one expects would be given when making a purchase;
(4) the length of time the alleged infringer has used the mark without evidence of actual confusion arising;
(5) the intent of the alleged infringer in adopting the mark;
(6) the evidence of actual confusion;
(7) whether the goods are marketed through the same channels;
(8) the extent to which the target markets are the same;
(9) the perceived relationship of the goods, whether because of their near-identity, similarity of function, or other factors; and
(10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.

*Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 709 (3d Cir. 2004) (citing *A & H*, 237 F.3d at 212).

4

preliminary injunction hearing. Because the hearing was held in September, the parties were thus operating within this informal regime between February and September.

Defendants respond that they complied with Plaintiff's September 1 request for "full responses" by serving written responses and objections on September 14. The Court does not find that these responses and objections are so woefully deficient that they should be deemed a failure to respond. Nor does Plaintiff's dissatisfaction with the contents alone justify a waiver. But the Court takes this opportunity to remind the parties that incorporating general objections into each response contravenes Rule 34(b)(2)(B)'s specificity requirement. The December 1, 2015 amendments to the Federal Rules of Civil Procedure require the responding party to state the grounds for its objections "*with specificity*" and to "state whether any responsive materials are being withheld on the basis of that objection." 2015 Adv. Comm. Notes to Rule 34 (emphasis added). Labeling a discovery request as "overbroad" leaves the requesting party and the reviewing court without the specifics to advance the ball in discovery.

Because the formal 30-day timeline did not apply until the parties submitted their briefing for the preliminary injunction, Defendants' responses were not technically untimely. Accordingly, Defendants did not technically waive their objections. But both parties are on notice that the Court will not tolerate general objections that violate Rule 34 in subsequent discovery requests from either party. Likewise, the parties are also on notice that, with respect to the Court's view of their discovery obligations and the like, "technicalities" will not always carry the day. Suffice it to say, failure to serve responses that are not compliant with the Federal Rules may result in the offending party needing to resubmit their responses. *See Fischer v. Forrest*, 2017 WL 773694 (S.D.N.Y. Feb. 28, 2017).

## II. Defendants Did Not Waive Privilege

Similarly, Plaintiff asserts Defendants have waived privilege by making productions on three occasions without a privilege log. "If a party fails to timely produce a privilege log or other adequate description of the basis for withholding specific documents on the grounds of privilege, such failure may result in a waiver of the asserted privilege." *Parks, LLC v. Tyson Foods, Inc.*, No. 5:15-CV-00946, 2015 WL 5042918, at *4 (E.D. Pa. Aug. 26, 2015).

### A. June 15-16, 2020 Production

Defendants justify their failure to provide a privilege log with their first production because the parties were still engaged in informal discovery. Defendants sent certain responsive documents via email and did not serve formal responses and objections at that time. For the same reasoning as above, the Court does not find that the failure to serve a privilege log during the informal discovery period created a waiver.[2]

### B. September 25, 2020 and October 2, 2020 Productions

Between these two productions, Defendants served about 2,000 individually paginated documents.[3] Defendants served a privilege log on October 5, 2020. The rules do not define "timely" production. The roughly ten-day delay did not prejudice Plaintiff. Accordingly, there was no waiver. *Compare Get-A-Grip, II, Inc. v. Hornell Brewing Co., Inc.*, 2000 WL 1201385

---

[2] The Court takes notice that Plaintiff similarly produced documents without a log over the summer during the informal discovery period. Both parties should note that they would have helpfully "advanced the ball" if they had done so, particularly because they should have known such logs would eventually be needed.

[3] According to Plaintiff, the documents in these productions did not have their "borders preserved" and lacked explanatory correspondence. Plaintiff does not explain what is meant by the lack of borders. The Court construes this to mean the productions lacked Bates stamping or other identifying information.

To the extent Defendants are producing documents as individually paginated documents without explanatory correspondence, the Court directs the parties to adhere to the terms of the parties' ESI protocol. If the parties have not yet agreed to such a protocol (because they were previously exchanging documents informally), the Court directs them to prioritize entering into such an agreement.

6

(E.D. Pa. 2000) (plaintiff who produced log two months after court order waived privilege) *with* *In re Total Containment, Inc.*, 2007 WL 1775364 (Bankr. E.D. Pa. 2007) (amended log produced in less than a month was sufficiently prompt).

## III. Whether Productions Were Deficient

In earlier correspondence with the Court, Plaintiff articulated the relevance of its seven requests. The Court considers those relevancy justifications along with the arguments advanced in Plaintiff's motion to compel.

### A. Contracts and Term Sheets for Sales under THEIA Mark (Request 1)

Plaintiff first requests "all contracts, draft contracts, and/or term sheets for goods or services" sold domestically and abroad. According to Plaintiff, Request No. 1 is relevant to establishing Defendants' use of the mark and the channels and consumers for Defendants' goods and services. Defendants agreed to produce final contracts and term sheets for domestic sales, but not drafts on the grounds that they are not relevant and are disproportionate. Defendants seek to redact the names of its government partners, investors, and customers. Defendants have refused to produce documents relating to foreign sales on the grounds the case concerns only alleged infringement of Plaintiff's mark in the United States.

Plaintiff argues it is entitled to production of "all unique versions" and Defendants' production is deficient because their own corporate witnesses stated additional documents exist. Because Defendants' corporate secretary admitted to between 50 and 100 different partner or investor meetings, Plaintiff maintains that production would not be burdensome. Doc. No. 48-6 (Gallagher Depo. Tr.) at 8.

Although Plaintiff is entitled to responsive material—which includes non-privileged drafts, Plaintiff's request for "*all* contracts, draft contracts and/or term sheets" is overbroad. Defendants

7

have proposed to limit the request to only producing final contracts and term sheets. The Court adopts the Defendants' suggestion in part that Request No. 1 be limited to the final versions of contracts. Defendants are not compelled to produce term sheets.

However, because a Protective Order is already in place, Doc. No. 27, Defendants should not redact the names of the consumers as this would defeat the purpose of identifying any common consumer base. Instead, Defendants can designate these documents as "HIGHLY CONFIDENTIAL," as provided in the Protective Order.

Last, because activities outside of the United States can give rise to an action for trademark infringement, Defendants are directed to produce contracts for foreign—as well as domestic—sales. *See Electro Medical Equip. Ltd. v. Hamilton Med. AG*, 1999 WL 1073636, at *11 (E.D. Pa. Nov. 16, 1999); *Rousselot B.V. v. St. Paul Brands, Inc.*, 2019 WL 6825763 (C.D. Cal. July 24, 2019). As the Supreme Court has held, there is no "blanket immunity [for] trade practices which radiate unlawful consequences here, merely because they were initiated or consummated outside the territorial limits of the United States." *Steele v. Bulova*, 344 U.S. 280, 288 (1952) (Lanham Act applied to a U.S. citizen who sold watches with the plaintiff's trademark in Mexico).

Defendants object to discovery into their conduct abroad, including sales of their goods and services, on the basis that the "case concerns only alleged infringement of Plaintiff's mark in the United States." Doc. No. 48-7 at 6, 8. But because a U.S. entity's foreign sales of infringing products can create liability under the Lanham Act, Plaintiff's request is relevant. *See Reebok Int'l, Ltd. v. Marnatech Enters.*, 970 F.2d 552 (9th Cir. 1992). Moreover, the Court notes that Plaintiff has not limited its request for relief based solely on alleged infringing activities within the United States.[4]

---

[4] Indeed, Plaintiff's request for a preliminary injunction refers to the irreparable harm to its sales of goods and services worldwide caused by Defendants' foreign presence. Doc. No. 2 at 21. And, Plaintiff

8

The Court thus grants Plaintiff's motion to compel Request No. 1 in part. Defendants are directed to produce any outstanding non-privileged final contracts for both domestic and foreign sales and any last disclosed drafts disclosed to third parties but which did not result in an executed contract. The Court also reminds the parties, however, that a decision regarding discovery does not mean the fruits of discovery are necessarily admissible at trial.

### B. Target Launch Dates (Request 2)

Plaintiff requests material "referring or relating to launch dates for Defendants' satellite network." Plaintiff contends the launch dates over time are relevant to the likelihood of confusion analysis and Defendants' alleged lack of bona fide intent, grounds on which to challenge an application. Defendants have agreed to produce current launch dates and are currently searching for earlier business plans. Plaintiff emphasizes that Defendants' 30(b)(6) witness discussed launch date records from 2016 and admitted that Defendants had neither looked for those documents nor confirmed they existed. Doc. No. 48-5 (Fargnoli Depo. Tr.) at 9.

While briefing is ongoing, the Court is not prepared at this time to rule on the timeliness of Plaintiff's request to *void ab initio* Defendants' registration. Without opining on whether such relief is warranted at the preliminary injunction stage, discovery that bears on Defendants' bona

---

emphasizes that Defendants have registered the mark abroad based on their U.S. applications. In its response to the motion to dismiss, Plaintiff explicitly wrote that it was not seeking any relief with respect to foreign registrations. Doc. No. 15 at 10-12. In its findings of fact and conclusions of law, however, Plaintiff included a new basis of relief based on foreign registration. Specifically, Plaintiff requested that the Court enjoin Defendants from converting Defendants' International Registration into a Japanese national registration. Doc. No. 36 ¶ 82.

The Court expresses no opinion here on the merits of Plaintiff's request for a preliminary injunction, including whether enjoining a foreign registration is necessary or appropriate. However, the extent of Defendants' sales and marketing efforts targeted abroad is relevant not only to Plaintiff's claims of alleged domestic activity but also to whether the Lanham Act applies extraterritorially. *See SouthCo, Inc., v. Fivetech Tech. Inc.*, 982 F. Supp. 2d 507, 512 (E.D. Pa. 2013) ("An American company's lost sales abroad because of trademark infringement can be considered when in the substantial effect analysis.").

9

fide intent is relevant and discoverable. Defendants admitted that they have not searched for this material, so cannot confirm that it no longer exists.

The Court grants Plaintiff's motion to compel for Request No. 2 and directs Defendant to search for and produce the requested documentation of anticipated prior launch dates promptly. The parties should confer with each other to agree on a reasonable production date.

### C. Business Plans and/or Investor Materials Referring or Relating to the THEIA Mark (Request 3)

Plaintiff justifies Request No. 3 as relevant to Defendants' use of the contested mark, and the channels and consumers for Defendants' goods and services. Defendants have agreed to produce documents sufficient to disclose their business plans, but limit their production to goods and services offered in the United States. Defendants are currently searching for earlier business plans and substantively different investor or partner presentations.

Plaintiff maintains this limitation is deficient. Plaintiff excerpted deposition and hearing testimony showing there are more responsive documents that have yet to be produced. *Cf. Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, No. CV 15-6480, 2020 WL 3498161, at *3 (E.D. Pa. June 29, 2020) (denying plaintiffs' motion to compel where plaintiffs failed to present any evidence that affirmatively indicated responsive documents existed). Defendants' corporate representative testified that Defendants have not produced all of their marketing materials; instead, an "example of some of what [Defendants] use has been turned over." Fargnoli Depo. Tr. at 3-4. And, Defendants' corporate secretary testified that Defendants customize their marketing materials for each prospective investor or partner and have held between 50 and 100 of these such meetings. Gallagher Depo. Tr. at 8-9.

Although Request No. 3 is relevant, among other things, to determining whether the target markets are the same, requesting "*all* business plans and/or investor materials" is overbroad.

Instead, the production should be limited to substantively different plans. For reasons already expressed, Defendants may not impermissibly limit production to business plans for goods and services only offered in the United States.

Thus, the Court grants Plaintiff's motion to compel Request No. 3 in part. Defendants are directed to produce outstanding business plans and investor materials for goods and services offered in both the United States and abroad. Defendants do not need to produce duplicative versions to the extent they were already provided to Plaintiff.

### D. Marketing and Advertising Materials Referring or Relating to the THEIA Mark (Request 4)

Plaintiff argues that Request No. 4 is relevant to establishing, among other things, whether the goods are marketed through the same channels and whether there is any overlap in target markets. *See Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 471 (3d Cir. 2005) (quoting *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983)).

Defendants have agreed to produce documents limited to U.S. marketing and advertising materials. Plaintiff argues that the production is deficient because Defendants have merely sent screen captures of Theia Group's website. Because Defendants have repeatedly referenced their efforts to remain discrete, there are likely materials which have not been publicly distributed.[5] "In general, the producing party is in a far better position than the court to determine how to search for and collect documents." *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, No. CV 15-6480, 2020 WL 3498161, at *4 (E.D. Pa. June 29, 2020). Defendants admit that their website invites inquiries but that it does not list any products. Rather, their marketing strategy involves in-person conferences, scheduled by appointment. Fargnoli Depo. Tr. at 6 (These meetings are

---

[5] In their opposition to the preliminary injunction, Defendants admit their "products are not available to the general public, but rather are restricted to qualified parties. Public access of an Internet site is not the same as offering wares or services to the general public." Doc. No. 11 at 31.

11

"[v]irtually always face-to-face"). Because most of their marketing is conducted in person, Defendants' production is admittedly deficient.

At least insofar as Defendants have admitted there is more to produce, the Court grants Plaintiff's motion to compel a meaningful response to Request No. 4. Defendants are directed to produce marketing and advertising materials Defendants use for foreign and domestic sales of goods and services, including those used in face-to-face meetings and materially different internet screen shots. Should the situation warrant it, Defendants may designate certain documents as "HIGHLY CONFIDENTIAL," per the terms of the parties' protective order.

### E. Patent Applications or Registrations for Goods/Services using the THEIA Mark (Request 6)

Plaintiff vaguely asserts Request No. 6 relates to Defendants' good or services. Defendants object to this request and have refused to produce any additional patent materials. First, Defendants note that the present dispute is about trademark—not patent—infringement, so Plaintiff's request for patent applications is irrelevant. Second, although Defendants have produced certain publicly available patents applications, Plaintiff fails to meet the heightened relevancy standard to justify discovery of pending patent applications.

Courts agree that the "secrecy of a patent application should be preserved when possible" and will weigh the requesting party's interest in the application against the objector's interest in secrecy. *Central Sprinkler Co. v. Grinnell Corp.*, 897 F. Supp. 225, 227 (E.D. Pa. 1995). Because Plaintiff is suing over the THEIA mark, Plaintiff needs to establish the relevancy of Defendants' invention to the disputed mark. Plaintiff fails to do so here. Instead, because Plaintiff previously received publicly available wrappers, it claims an entitlement to the pending—and confidential—applications. Such an argument does not establish the relevancy of pending patent applications to

its trademark dispute, nor does Plaintiff advance any argument to justify disclosure of otherwise confidential material.

Accordingly, the Court denies Plaintiff's motion to compel as to Request No. 6.

### F. Licensing or Approval from Any Regulatory Agency for Operating the THEIA Satellite Network (Request 7)

Last, Plaintiff justifies Request No. 7 as relevant to Defendants' use of the THEIA mark. Defendants agreed to produce documents sufficient to show licensing or approval from any U.S. regulatory agency for operation of the satellite network. Defendants object to producing any documents relating to non-U.S. regulatory approval or licenses.

Defendants' corporate secretary testified in his deposition to the existence of an FCC license, NOAA license, and NID, all containing "THEIA." Gallagher Depo. Tr. at 3. Although Plaintiff acknowledged receipt of new FCC documents in the recent production, it maintains that the NOAA license and NID are outstanding and seeks to compel these documents. The NOAA license and NID are both highly relevant and Defendants have conceded on the record that they exist.

Plaintiff, however, fails to articulate any theory of relevance for the non-U.S. regulatory licenses and approvals. But because Plaintiff did not offer any reason (either in its prior correspondence or in its motion) for foreign licensing or approval, Plaintiff has not met its initial burden as the party moving to compel.

The Court thus grants Plaintiff's motion to compel Request No. 6 in part. Defendants are directed to produce documents relating to, and including, the NOAA license and NID. But Defendants do not need to produce at this time foreign licensing or approvals.

13

## CONCLUSION

For the reasons set out in this memorandum, the Court grants Plaintiff's Motion to Compel Request No. 2, grants Requests No. 1, 3, 4, and 7 in part, and denies Request No. 6. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE