## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THEIA TECHNOLOGIES, LLC | : | |
| Plaintiff, | : | |
| v. | : | Case No.  2:20-cv-00097-GEKP |
| THEIA GROUP, INCORPORATED, | : | |
| -- and -- | : | |
| THEIA HOLDINGS A, INC. | : | |
| Defendants. | : | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS THEIA GROUP, INCORPORATED AND THEIA HOLDINGS A, INC. MOTION FOR RECONSIDERATION AND/OR TO AMEND THE PROTECTIVE ORDER

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     LOCAL RULE 26.1(F) CERTIFICATION............................................................. 2

III.    PROCEDURAL AND FACTUAL BACKGROUND............................................. 2

IV.     LEGAL STANDARD ............................................................................................ 3

        A.      Reconsideration............................................................................................ 3

        B.      Proportionality ............................................................................................. 3

        C.      Amendment of the Protective Order ............................................................ 4

V.      ARGUMENT .......................................................................................................... 4

        A.      Reconsideration Is Warranted...................................................................... 4

                1.      NOAA License................................................................................... 6

                2.      The U.S. Government's NID Letter.................................................... 8

                3.      Unredacted Contracts and Documents................................................ 9

        B.      In the Alternative, Good Cause Exists to Amend the Protective Order................ 13

VI.     CONCLUSION....................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apeldyn Corp. v. AU Optronics Corp.*,
    2012 WL 2366537 (D. Del. June 20, 2012).............................................................................4

*Globalaw Ltd. v. Carmon & Carmon Law Office*,
    452 F. Supp. 2d 1 (D.D.C. 2006) .....................................................................................12

*I.M. Wilson, Inc. v. Grichko*,
    2019 WL 5394113 (E.D. Pa. Oct. 22, 2019)....................................................................5 n.3

*Johnson v. FBI*,
    2016 WL 5162715 (E.D. Pa. Sept. 21, 2016) ................................................................3, 5, 7

*Kirsch v. Delta Dental*,
    2009 WL 10728228 (D.N.J. Dec. 31, 2009)........................................................................5

*Nothstein v. USA Cycling*,
    2020 WL 6131574 (E.D. Pa. Oct. 19, 2020).................................................................3, 6, 12 n.9

*Oliveri v. U.S. Food Serv.*,
    2011 WL 13350508 (M.D. Pa. Jan. 13, 2011)..................................................................4, 15

*Pansy v. Borough of Stroudsburg*,
    23 F.3d 772 (3d Cir. 1994)...............................................................................................4, 14

*Pertile v. Gen. Motors, LLC*,
    2016 WL 1059450 (D. Colo. Mar. 17, 2016) .......................................................................6

*Peterson v. Wolfington*,
    2017 WL 736705 (E.D. Pa. Feb. 24, 2017) ..........................................................................3

*Rodriguez-Isona v. Guarini*,
    2005 WL 2850367 (E.D. Pa. Oct. 28, 2005)........................................................................9

**Rules**

Fed. R. Civ. P. 26(b)(1).............................................................................................................3

## I.    INTRODUCTION

Defendants Theia Group, Incorporated and Theia Holdings A, Inc. ("Theia Group") request reconsideration of the Court's Memorandum ("Memo") (ECF No. 58) and Order (ECF No. 59) granting-in-part and denying-in-part Plaintiff Theia Technologies LLC's ("Plaintiff") Motion to Compel (ECF No. 48) (together, "Memo and Order"), specifically the portions of the Memo and Order compelling production of: (1) the "NOAA License"; (2) the "[U.S. Government] NID [letter]"; and (3) "any outstanding non-privileged final contracts for both domestic and foreign sales and any last disclosed drafts disclosed to third parties but which did not result in an executed contract" without "redact[ing] the names of the consumers."

Categories (1) and (3) comprise extremely sensitive government documents and information, and/or pertain to classified work performed for the U.S. Government, which Theia Group is *prohibited* from producing—even designated as Highly Confidential under the current Protective Order.  And Theia Group cannot produce the U.S. Government's "NID letter" because Theia Group does not have it and cannot obtain it.  Should the Court deny reconsideration of the Memo and Order, Theia Group moves in the alternative to amend the Protective Order to provide enhanced protections for these categories of government sensitive information.

Plaintiff's Motion to Compel focused on its claim of waived objections and demand for "all documents" on various topics and mentioned past redactions only in passing.  Because Plaintiff did not substantively address the confidentiality issues in its motion, Theia Group also did not.  Instead, it informed the Court that it would be filing a separate motion for a protective order to address confidentiality concerns.  In light of the Court's ruling on Plaintiff's motion, Theia Group files this motion instead.

## II.      LOCAL RULE 26.1(F) CERTIFICATION

The parties conferred on November 17, 2020.  Plaintiff said it would oppose this motion.
(*See* Declaration of Aaron Rauh ("Rauh Decl.") ¶¶ 3-9.)

## III.      PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff's Motion to Compel largely focused on Theia Group's alleged waiver of
objections during the informal discovery period and its demands for the production of "all
documents" responsive to its First Set of Requests for Production.  (ECF No. 48.)  Plaintiff did
***not*** substantively argue for, or move to compel Theia Group to produce unredacted documents;
instead, it mentioned that documents had been redacted only in passing.  Theia Group's five-
page opposition focused on the same two issues presented in plaintiff's motion.  (ECF No. 49.)
However, foreseeing that Plaintiff's demands could potentially implicate government-sensitive
information, and in light of Plaintiff's passing reference to redacted documents in the its motion,
Theia Group did note in its opposition its intent to seek a protective order to prohibit the
disclosure of extremely sensitive and confidential documents, contracts, agreements, and
information.  (*See id.* at 5 n.2.)

In ruling on Plaintiff's motion, the Court held that Theia Group did not waive its
objections (including privilege), rejected Plaintiff's demands for "all documents," and denied
other aspects of Plaintiff's motion not pertinent here.  The Court did, however, order Theia
Group to produce limited additional documents,[1] including three categories that are the subject of
this motion: the "NOAA License," the "[U.S. Government] NID [letter]," and "[a]ny outstanding
non-privileged final contracts for both domestic and foreign sales and any last disclosed drafts

---

[1] Even prior to the issuance of the Memo and Order, Theia Group started to produce documents the Court directed it to produce in that Memo and Order, including documents about prior launch dates, additional responsive contracts, and non-duplicative, substantively different business, investor, marketing, and advertising materials relating to the Theia Marks.

disclosed to third parties but which did not result in an executed contract" *without "redact[ing] the names of the consumers*."[2]  (ECF No. 58 at 7-9 (emphasis added).)

## IV.   LEGAL STANDARD

### A.   Reconsideration

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Johnson v. FBI*, 2016 WL 5162715, at *3 (E.D. Pa. Sept. 21, 2016) (citation omitted).  Courts grant reconsideration "if the moving party establishes one of three grounds: (1) there is newly available evidence; (2) an intervening change in the controlling law; or (3) there is a need to correct a clear error of law or prevent manifest injustice." *Id.* (citation omitted).

### B.   Proportionality

Rule 26 permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense *and* proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1) (emphasis added).  Courts have considered the relative confidentiality of disputed discovery in assessing proportionality.  *See, e.g.*, *Nothstein v. USA Cycling*, 2020 WL 6131574, at *1, *14-15 (E.D. Pa. Oct. 19, 2020) (granting a motion for protective order barring disclosure, and approving redactions of "highly sensitive" identities); *Peterson v. Wolfington*, 2017 WL 736705, at *3 (E.D. Pa. Feb. 24, 2017) (denying motion to compel because "the potential mischief and burden of producing this [highly sensitive] information is out of all proportion to any legitimate benefit to plaintiff").

---

[2] Theia Group started to produce responsive documents with partner names redacted during the informal discovery period and continued to do so until the issuance of the Memo and Order.  Certain of those documents were admitted into evidence without objection at the evidentiary hearing.  (*See* DX3-DX6 and DX27.)

### C.       Amendment of the Protective Order

"[C]ourts have discretionary authority to modify a stipulated protective order." *Apeldyn Corp. v. AU Optronics Corp.*, 2012 WL 2366537, at *1 (D. Del. June 20, 2012) (citation omitted).  The party seeking to modify a stipulated protective order bears the burden of demonstrating good cause for the modification.  *See, e.g.*, *Oliveri v. U.S. Food Serv.*, 2011 WL 13350508, at *1 (M.D. Pa. Jan. 13, 2011) ("Defendant . . . has established good cause for the issuance of the proposed additional protective order . . . .")  "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994).  In considering whether to modify a protective order, "[courts] use the same balancing test that is used in determining whether to grant such orders in the first instance," plus the additional, non-outcome determinative factor, of "the reliance by the original parties on the confidentiality order." *Id*. at 790.  The balancing test factors ("*Pansy* factors") include:

1.  whether disclosure will violate any privacy interest;
2.  whether the information is being sought for a legitimate purposed or for an improper purpose;
3.  whether disclosure of the information will cause a party embarrassment;
4.  whether confidentiality is being sought over information important to public health and safety;
5.  whether the sharing of information among litigants will promote fairness and efficiency;
6.  whether a party benefitting from the order of confidentiality is a public entity or official; and
7.  whether the case involves issues important to the public.

*Oliveri*, 2011 WL 13350508, at *3 (citing *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)).

### V.      ARGUMENT

### A.       Reconsideration Is Warranted

To be clear, Theia Group seeks only *limited* reconsideration of the Court's Memo and Order.  The NOAA License, contracts, and redacted documents that are the subject of this

motion are extraordinarily sensitive government documents, pertain to *classified* work performed for the U.S. Government, and/or contain government identities which Theia Group is contractually prohibited from disclosing.  The parties did not substantively address that confidentiality issue in their respective submissions in connection with Plaintiff's Motion to Compel, because that motion concerned the alleged waiver of Theia Group's objections and Plaintiff's demand for Theia Group to produce "all documents" in various categories with only a passing reference to Theia Group's past production of redacted documents.  Given the fact that Plaintiff did not move to compel Theia Group to produce documents without confidentiality redactions, Theia Group had no reason to address the issue in its limited five-page opposition.

As a result, Theia Group meets the standard for reconsideration.  Specifically, this case presents "a need to correct a clear error of law or prevent manifest injustice" because the Memo and Order address an issue that the parties had *not* fully briefed.  *Johnson*, 2016 WL 5162715, at *3 (citation omitted); *see also Kirsch v. Delta Dental*, 2009 WL 10728228, at *4 (D.N.J. Dec. 31, 2009) ("[T]he Court finds Plaintiff's arguments in his motion for reconsideration persuasive, *particularly the argument that he did not have the opportunity to fully brief and argue the issue* . . . ." (emphasis added)).[3]

Theia Group addresses each of the three categories of documents below, including confidentiality issues, proportionality, and, where available, alternative, less burdensome means to provide Plaintiff with the information it claims to require.

---

[3] Any argument that the issues presented here were implicitly addressed in Plaintiff's prior motion because that motion sought "a wider array" of relief cannot defeat this motion for reconsideration.  *See I.M. Wilson, Inc. v. Grichko*, 2019 WL 5394113, at *3 n.7 (E.D. Pa. Oct. 22, 2019) ("The defendants' arguments predating the Court's decision concerned a wider array of potential irreparable harm.  Accordingly, the defendants were not negligent to omit their current argument before the grant of preliminary injunctive relief.").

1.    <u>NOAA License</u>

The NOAA License is an extremely sensitive U.S. Government document, the terms of which Theia Group is prohibited from disseminating, even within the company. The NOAA License's relevance to this case is limited to the fact that it has been granted (*i.e.*, it allows Theia Group to launch the Theia Satellite Network), which is corroborated by NOAA's website and Theia Group's document production. The specific terms of the License are not relevant to this trademark infringement case, and in view of the extreme confidentiality of those terms, production of the NOAA License is not proportional to the needs of the case. *See Nothstein*, 2020 WL 6131574, at *1, *14 (granting motion for protective order barring disclosure of, and approving redactions of, "highly sensitive" information that was of "marginal relevance" to "Plaintiff's ability to prove his claims."); *see also Pertile v. Gen. Motors, LLC*, 2016 WL 1059450, at *2-5 (D. Colo. Mar. 17, 2016) (denying motion to compel because the defendant's confidentiality concerns outweighed plaintiff's need for the disputed information).

The NOAA License is one of the most commercially sensitive documents within Theia Group. Theia Group's co-founder, Joseph Fargnoli, confirmed that the license is "highly proprietary between us [Theia Group] and the Government." (Preliminary Injunction Hearing Transcript, July 15, 2020 ("July 15 Tr.") at 127:5 (Fargnoli).) Theia Group is prohibited from disclosing the license to anyone beyond a handful of pre-approved Thiea Group employees, only two of which have actually seen it. One of those pre-approved employees is Erlend Olson, Chief Operating Officer, who keeps it in a company safe due to Thiea Group's confidentiality obligations to NOAA. (*See* Declaration of Erlend Olson ("Olson Decl.") ¶¶ 8-9.) Theia Group believes that disclosure of its terms to any non-approved employees at Theia Group, or anyone outside of Theia Group, risks revocation of the license by NOAA. (*See id.* ¶ 10.) Were the license to be revoked, Theia Group could not move forward with its business plans. (*See id.*)

Accordingly, Theia Group cannot produce the NOAA License to Plaintiff, even with a Highly Confidential designation.  (*See id.* ¶ 11.)

In contrast, the document that manifests the NOAA License is *not* at all relevant to this case.  The only potential relevance is that the NOAA License *exists*, which, as noted above, is critical to Theia Group launching the Theia Satellite Network.  The specific terms of the license are *not relevant* to a trademark infringement action, which is based on the likelihood of confusion analysis.  NOAA's website[4] confirms, and Theia Group's document production corroborates, the license's existence, making production of the license itself redundant and unwarranted.  (*See id.* ¶¶ 6-7, Exs. A-B.)  *See Johnson*, 2016 WL 5162715, at *6 (granting reconsideration: "Ms. Johnson has not provided a legal basis to conclude that the FBI must produce duplicative or redundant materials beyond or in addition to what the FBI has already provided in the Discovery File.").

Plaintiff claimed in meet and confer that Mr. Gallagher put both of these documents "into controversy," and that Theia Group's objections to producing the NOAA License is akin to using the attorney-client privilege as a sword and shield.  (Rauh Decl. ¶ 4)  Neither claim is true.  Plaintiff solicited Mr. Gallagher's testimony about both the NOAA License and the NID Letter at his deposition and Mr. Gallagher testified only about his general understanding of those documents, and why they were relevant to Theia Group's ability to conduct business.  Because he had never seen either document (*See* Declaration of John Gallagher ("Gallagher Decl.") ¶ 2), Mr. Gallagher could not have relied on the contents of the documents for his testimony and therefore could not put them "into controversy."  In fact, but for Plaintiff's questioning at his

---

[4] https://www.nesdis.noaa.gov/CRSRA/noaaLicensees.html.

deposition, Mr. Gallaher would have had no reason to mention the documents at his deposition or the subsequent hearing.

To the extent Plaintiff claims Theia Group put the documents "into controversy" because Mr. Gallagher testified at the hearing that it would be "difficult and embarrassing" to change Theia Group's name, Mr. Gallagher meant only that it would be administratively difficult.  (*See id*. ¶ 4; July 16 Tr. at 53:11-52:2 (Gallagher).)  Having never seen the document, Mr. Gallagher could ***not*** have been referring to restrictions contained within the documents themselves, making this situation entirely dissimilar from the sword and shield analogy on which Plaintiff relies from attorney-client privilege case law.  But to be clear, Theia Group is not taking the position that if it had to change its name, it would be unable to retain the NOAA License.  (*See id*.)  Rather, its position it that it would be administratively difficult to change the name.  (*See id*.)

Due to the burden of the extreme confidentiality and prohibited disclosure of the NOAA License's terms, the fact that the license's existence has been corroborated, and the lack of relevance of the specific license terms to this trademark dispute, Theia Group requests that the Court reconsider its Order compelling production of the NOAA License.

### 2.    The U.S. Government's NID Letter

Theia Group does not possess the NID letter it was ordered to produce, and it has been unable to obtain a copy from the U.S. Government.[5]  (*See* Gallagher Decl. ¶ 5.)  Because Theia Group does not have possession, custody, or control of the U.S. Government's NID letter, it is

---

[5] Theia Group was investigating whether it had possession of, or could obtain, a copy of the U.S. Government's NID Letter when Theia Group filed its opposition to Plaintiff's Motion to Compel.  A representative of Theia Group subsequently attempted to obtain from the Office of the Secretary of U.S. Commerce a document indicating the National Interest Determination previously made by the U.S. government concerning Theia Group's Theia Satellite Network.  (Gallagher Decl. ¶ 5.)  Theia Group was told that the U.S. government would not provide such a document.  (*Id*.)  Instead, Theia Group was told that pursuant to the National Interest Determination, it needs to provide the name of a specific country with whom it would like to meet to the Department of Commerce, and the Secretary of Commerce will send out directions to the relevant U.S. embassy to advocate on behalf of Theia Group. (*Id*.)  Theia Group was also told that each such letter, referred to as NID letters within Theia Group, is confidential and that the Department of Commerce will not provide Theia Group with a copy of letters the Secretary of Commerce has sent on Theia Group's behalf.  (*Id*.)

unable to produce it in compliance with the Order.  *See Rodriguez-Isona v. Guarini*, 2005 WL

2850367, at *3 n.2 (E.D. Pa. Oct. 28, 2005) ("The Court cannot compel Defendants to

produce documents that they do not possess.").

When Plaintiff and Theia Group met and conferred prior to Theia Group's filing of this

motion, Plaintiff stated that it would not agree not to oppose reconsideration of the Memo and

Order as it pertains to this issue unless Theia Group provided more information on the effort it

made to obtain a copy of the NID letter from the U.S. Government.  (*See* Rauh Decl. ¶ 6.)  The

Declaration of John Gallagher submitted herewith provides such explanation.  (*See* Gallagher

Decl. ¶ 5.)[6]  Accordingly, Theia Group anticipates that Plaintiff will not oppose this aspect of its

motions for reconsideration.  In the event that it does, Theia Group requests that the Court

reconsider and reverse its Order compelling production of the NID letter notwithstanding any

such opposition.

### 3.    Unredacted Contracts and Documents

Production of unredacted contracts and documents with the U.S. Government and

sovereign nations would not be proportional to the needs of the case in view of their extreme

confidentiality, prohibited disclosure, and marginal relevance to this case given Theia Group's

proposal to identify current and prospective customer identities in an interrogatory response.

Theia Group already produced several agreements and documents with redactions for

government sensitive information, some of which were introduced and admitted at the

preliminary injunction hearing in their redacted state without objection.  (*See* DX3-DX6 and

DX27.)  Theia Group anticipates that it will negotiate and enter into additional such contracts

pertaining to classified work for the U.S. Government and/or containing government sensitive

---

[6] The Declaration of John Gallagher also identifies other documents produced by Theia Group that corroborate the existence of the U.S. Government's NID Letter, including DX3, which was admitted into evidence without objection at the preliminary injunction hearing.  (*See* Gallagher Decl. ¶ 6.)

information, such as the identities of the specific government identities, during the course of this litigation.  Due to the extremely sensitive nature of these few[7] agreements and documents, Theia Group believes it cannot produce them without redactions.  Some of these agreements relate to work that Theia Group will perform for the U.S. Government, while others relate to work Theia Group will perform for sovereign nations.

For example, a subsidiary of Theia Group, was recently selected for a U.S. government project to perform certain services classified by the U.S. Government.  (Olson Decl. ¶ 12.) Because of the extremely sensitive and confidential nature of the negotiations and the contract itself, as well as the work products expected to be produced from it, Theia Group cannot produce even the contract in this litigation.  (*id.*)  Further, the specific work to be performed by Theia Group under the contract, which is described within the contract itself, involves U.S. government classified information.  (*Id.* ¶ 13; *see also* July 16 Tr. at 24:24-25:4 (Gallagher).)  As such, only a very limited number of employees at Theia Group are authorized to do that work, which is so sensitive that even Theia Group's Chief Operating Officer is prohibited from seeing the work product output of the project.  (Olson Decl. ¶ 13.)  Once finalized, Theia Group anticipates that the contract may be responsive to the Court's Order.  However, due to the classified nature of the work to be performed under the contract, Theia Group is not permitted to disclose details about the contract to third parties or information about the classified work to be performed under the contract.  (*Id.* ¶ 14.)  Any disclosure of the contract, even if inadvertent, would jeopardize the contract and Theia Group's standing with the U.S. government.  (*Id.* ¶¶ 12, 14.)

Aside from this classified work for the U.S. government, Theia Group has disclosed that its current and prospective customers are primarily sovereign nations for Theia Group's Master

---

[7] To be clear, the vast majority of documents produced by Theia Group do not contain confidentiality redactions, and for those that do, the redactions are narrowly tailored to the identities of its sovereign nation partners.

Partner Program (MPP). (*See, e.g.*, Olson Decl. ¶ 16; ECF No. 36 at 15-16 (citing July 16 Tr. at 24:10-23, 54:3-6; DX5-DX6, DX27).) Sovereign nations insist on the utmost confidentiality for discussions and protection of their contracts with Theia Group, and the contracts prohibit Theia Group from disclosing their identities for a number of reasons, including matters relating to national security. (Olson Decl. ¶ 17; DX6 ("under no circumstances shall the Parties disclose to any third parties . . . [redacted] being parties to this Agreement.").)

As has come to light in this case, through no fault, action, or inaction of Theia Group, information was leaked and then subsequently disclosed in the local press that Theia Group had confidential discussions in 2018 with a particular sovereign nation regarding the MPP program. (Olson Decl. ¶ 18.) That government of that sovereign nation took the leak of the mere existence discussions so seriously that, on information and belief, it jailed the individuals who leaked the information. (*Id.*) In light of the obligations in its MPP contracts not to disclose sovereign nation identities, and also in light of what happened to those individuals, Theia Group believes that public disclosure of its partner identities, even if inadvertent, would seriously jeopardize Theia Group's standing in the international community, effectively ending ongoing MPP negotiations with certain sovereign nations, as well as form the bases for counterparties to stop performing under the existing MPP agreements, with no effective remedy for Theia Group. (*See id.*)

When meeting and conferring with Plaintiff prior to filing this motion, Theia Group explained to Plaintiff that, in lieu of producing unredacted agreements and documents identifying specific sovereign nations with whom Theia Group has agreements or has had discussions, Theia Group would be willing to disclose the identities of its current and prospective customers (*i.e.*, sovereign nations) in a narrative response to a non-objectionable interrogatory, designated as Highly Confidential. (*Id.* ¶ 19.) That list, combined with the marketing and investor documents

11

and agreements Theia Group has already produced, would allow Plaintiff to understand the full scope of the goods and services to whom Theia Group markets its services and the entities to whom Theia Group markets its goods and services.  The only information that Plaintiff would not receive under this proposal would be a map between customer names and specific goods and services offered or provided by Theia Group.  This is not required as knowledge of Theia Group's current and proposed customers and the goods and services offered by Theia Group is more than sufficient for purposes of this trademark case.[8]

Theia Group's proffered approach is similar to what has been done to protect similarly sensitive information in other cases.  *See Globalaw Ltd. v. Carmon & Carmon Law Office*, 452 F. Supp. 2d 1, 62 (D.D.C. 2006) ("Counterclaim Defendants have done what is required of them—they have identified the *class of customers* who purchase their legal services and have clearly specified how and in what manner they use the mark 'GLOBALAW.'  To allow more, and compel the client lists of Counterclaim Defendants to be turned over, would amount to a fishing expedition for which C & C has been unable to establish the slightest foundation." (emphasis added)).[9]  And it is permits Plaintiff discovery on issues it claims are relevant to the case, but in a manner that is proportional to the needs of the case given the highly confidential nature of the information sought by Plaintiff, as required by Rule 26.

---

[8] Japan is obviously of interest to Plaintiff in this case, but Theia Group has confirmed in a sworn declaration that it has not had any discussions with, and does not have any MPP agreements with Japan.  (Olson Decl., ¶ 20; *see, e.g.*, ECF No. 54 at 22 ("The injunction Theia seeks would . . . prohibit Theia Group from taking steps to convert its Japanese application to a national stage application . . . .").)  It should not be required to produce all of its other highly confidential documents merely to establish the absence of any disclosing discussions or agreements with Japan.

[9] In a case involving claims that a defendant published false information and leaked confidential and misleading information about the Plaintiff to the media, Judge Smith recently granted a motion for protective order barring disclosure, and approving redactions of "highly sensitive" identities of "confidential informants who provided allegedly false reports" about the Plaintiff where those identities were of "marginal relevance" to "Plaintiff's ability to prove his claims."  *Nothstein*, 2020 WL 6131574, at *1, *14.

Not surprisingly, Plaintiff claimed to need more during the parties' meet and confer, specifically claiming it needed specific current and prospective customer names to be mapped to specific goods and services.  But it offered *no* justification for that claim.  In fact, Plaintiff agreed that it did not need unredacted versions of these documents if there were other means of prove its baseless and inflammatory claim that Theia Group is building "spy" satellites (which is not true). (*see* Rauh Decl. ¶ 9.)  Plaintiff already has documents sufficient to determine and assess Theia Group's business and its goods and services, it will continue to have additional means of discovery to explore this topic (such as through additional depositions and interrogatories), and the redaction of current and prospective customer names from documents does not impede this discovery.

Lastly, to the extent Plaintiff argues in its opposition that the sovereign nations should simply intervene to protect their extremely confidential information, that is an impractical solution because their very intervention would necessarily disclose the information they seek to keep confidential.

Accordingly, Theia Group requests that the Court reconsider its Order compelling production of documents unredacted to reveal actual and prospective customer names.

**B.    In the Alternative, Good Cause Exists to Amend the Protective Order**

To the extent the Court declines to grant reconsideration, or declines to allow a narrative response in lieu of unredacted document production, Theia Group moves to amend the Protective Order to provide enhanced protections, including an in-person inspection protocol, for extremely confidential government sensitive information, including the NOAA License, the U.S. Government Contract, and unredacted copies of contracts and documents identifying current and

prospective sovereign nation MPP customers.  (*See* Exs. 1 (proposed Amended Protective Order (clean)) and 2 (proposed Amended Protective Order (redline)).)[10]

Good cause to enter the proposed amendments exists under the controlling *Pansy* test. *See Pansy*, 23 F.3d at 786.  Most importantly, the production of such government sensitive information was not contemplated when the parties stipulated to the original Protective Order in June, certain of these materials (like the U.S. Government contract) did not yet exist at that time, and Plaintiff did not object when several government sensitive information-redacted documents were admitted into evidence at the preliminary injunction hearing.  Indeed, the parties' motion for the entry of the original Protective Order expressly noted that it was for the purpose of "conducting expedited discovery in preparation for a preliminary injunction hearing."  (ECF No. 26 at 1.)  Thus, there has been minimal, if any, reliance by the parties on the original confidentiality order for the production of government sensitive information

*Pansy* factor (1), whether disclosure will violate any privacy interests, weighs strongly in favor of amending the protective order.  As discussed above, Theia Group is prohibited from producing government sensitive information such as the NOAA License.  Further, disclosing this extremely sensitive information risks harm to Theia Group's standing with the U.S. government and the international community, and even the NOAA License itself.  It also risks harm to Theia Group should its sovereign nation customers fail to perform under their current agreements with Theia Group, which are worth multiple billions of dollars, which would leave Theia Group with no remedy.  (Olson Decl. ¶¶ 10-12, 14, 18.)  *Pansy* factor (3) also weighs in favor of amending the Protective Order because disclosure of government sensitive information will cause Theia

---

[10] Theia Group understands that the COVID-19 pandemic may make it more difficult than usual to conduct a physical in-person inspection, and is willing to agree to a remote inspection protocol as other courts have adopted for in-person source code inspection in patent and copyright cases during these challenging times.

Group embarrassment when considered in light of Theia Group's obligations to the U.S. Government and sovereign nations.

These legitimate concerns alone provide good cause to amend the Protective Order, particularly when none of the other *Pansy* factors weigh against amending the Protective Order and there is minimal relevance to the specific information Plaintiff is seeking. *See Oliveri*, 2011 WL 13350508, at *3 (M.D. Pa. Jan. 13, 2011) (granting motion to amend stipulated protective order to add enhanced confidentiality protections: "[Defendant has] legitimate privacy interests with respect to the disclosure of its sensitive and private financial information. We find that the disclosure of such information without the additional protective order may result in substantial harm to Defendant.").

The procedure Theia Group is proposing, to allow for in-person inspection of materials with government sensitive information, is consistent with what is commonly done to protect extremely confidential and proprietary materials like source code. Indeed, many district courts, including within the Third Circuit, have local rules that that provide such protections for source code by default. *See, e.g.*, Western District of Pennsylvania Local Patent Rule 2.2 and Appendix 2.2 (effective Dec. 5, 2015),

https://www.pawd.uscourts.gov/sites/pawd/files/Local%20Patent%20R%20-%2012-5-2015.pdf

(providing for enhanced protections for "extremely sensitive 'Confidential Information' representing computer code and associated [documents] . . . disclosure of which to another party or non-party would create a substantial risk of serious harm that could not be avoided by less restrictive means.").[11] Although available, Theia Group did not press for that higher level of confidentiality to be included in the current Protective Order because it did not contemplate that

---

[11] *See also* United States District Court for the District of Delaware Default Standard for Access to Source Code, https://www.ded.uscourts.gov/sites/ded/files/pages/Default%20Standard%20for%20Access%20to%20Source%20Code_0.pdf (default procedures for making source code only available for inspection).

the type of materials at issue in this motion would need to be produced in this case. An in-person inspection protocol is even more compelling here because, unlike with source code—which is often the key evidence in patent infringement, the government sensitive information and documents at issue here are of marginal relevance to the likelihood of confusion analysis. Lastly, Plaintiff's position that the in-person inspection should be at a location convenient to Plaintiff's counsel in the Pacific Northwest (*see* Rauh Decl. ¶ 9)—and not at a location within the Eastern District of Pennsylvania—misses the point. It is *Plaintiff* that chose to file a complaint in the Eastern District of Pennsylvania, and in any event, Plaintiff has retained counsel within this district that could conduct the in-person inspection.

Accordingly, should the Court decline to reconsider its Order as requested, good cause exists to amend the Protective Order to provide enhanced protections for government sensitive information and documents.

## VI.    CONCLUSION

For the foregoing reasons, Theia Group requests that the Court reconsider its order compelling production of the NOAA License, the U.S. Government's NID Letter, and all final contracts and documents without redactions for sovereign nation identities. In the alternative, Theia Group requests that the Court amend the Protective Order to provide enhanced protections for the production of these materials.

Dated:        November 17, 2020        Respectfully submitted,

16

BONINI IP LAW, LLC

By: _s/ Frank J. Bonini, Jr._____
    Frank J. Bonini, Jr., Esquire
    Bonini IP Law, LLC
    150 N. Radnor Chester Rd.
    Suite F200
    Radnor, PA  19087
    Telephone:  (484) 382-3060
    Email: fbonini@boninilaw.com

GALLAGHER LAW PC

    James Hickey, Esquire
    Gallagher Law PC
    1600 Market Street
    Suite 1320
    Philadelphia, PA 19103
    Telephone: (215) 963-1555
    Email: james@gallagher-law.com

MORRISON & FOERSTER LLP

    Jennifer Lee Taylor (*Pro Hac Vice*)
    Sabrina A. Larson  (*Pro Hac Vice*)
    425 Market Street
    San Francisco, California  94105
    Telephone:  (415) 268-7000
    Facsimile:  (415) 268-7522
    Email:  JTaylor@mofo.com
          SLarson@mofo.com

    Mark L. Whitaker (*Pro Hac Vice*)
    Aaron D. Rauh (*Pro Hac Vice*)
    2000 Pennsylvania Ave., NW
    Suite 6000
    Washington, DC 20006
    Telephone: (202) 887-1500
    Facsimile:  202-887-0763
    Email:  MWhitaker@mofo.com
          ARauh@mofo.com

    **Attorneys for Defendants**
    **THEIA GROUP, INCORPORATED, and**
    **THEIA HOLDINGS A, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I, FRANK J. BONINI, JR., ESQUIRE, attorney for Defendants Theia Group, Incorporated and Theia Holdings A, Inc. hereby certify that I filed the within MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERTION AND/OR TO AMEND THE PROTECTIVE ORDER electronically and it is now available for viewing and downloading from the ECF system for the following:

Hillary A. Brooks, Esquire
Delfina S. Homen, Esquire
BROOKS QUINN, LLC
6513 132nd Avenue NE # 378
Kirkland, WA 98033

Diane Siegel Danoff, Esquire
Luke M. Reilly, Esquire
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104

Bonini IP Law, LLC

By:    s/Frank J. Bonini, Jr.
        Frank J. Bonini, Jr., Esquire
        Attorney for Defendants
        Theia Group, Incorporated
        Theia Holdings A, Inc.

Date:  November 17, 2020